PETROPLUS, JUDGE:
This claim came on for hearing on the following facts admitted in the Answer of the Respondent:
During the month of October, 1969, a critical shortage of water existed at Concord College, a State Institution, and the College was about to close because of an inadequate water supply. The Governor of the State of West Virginia, acting by his Administrative Assistant, requested the petitioner-claimant to transport his well drilling equipment to Athens, West Virginia, and drill such water wells as might be necessary to furnish Concord College with an adequate supply of water. The petitioner was advised that his services would be paid from the Governor’s contingent fund. Pursuant to said request and at the direction of the Governor of the State of West Virginia, the petitioner worked under extremely adverse weather conditions during the *11 months of October, November and December drilling two water wells and installing a pump under the direction of a Geologist from West Virginia University and a Supervisor from the West Virginia Department of Highways.
Upon the completion of the work and pursuant to the request of the Governor, the petitioner submitted a statement to the Governor for his services amounting to the sum of $11,119.33. The statement was approved and forwarded to the Auditor of the State of West Virginia for payment. The Auditor refused to pay the petitioner and yet refuses to pay said sum, although the petitioner acted in good faith under emergency orders to furnish the labor and materials which were critical for the continued operation of the College. The Governor and his assistants testified personally at the hearing, and their testimony indicates that the claim is reasonable, liquidated and undisputed and should be paid by the State of West Virginia as a moral obligation of the State.
The Auditor’s refusal to pay the claim, as revealed by the Answer, is based on the ground that the payment would be in violation of Article X, Section 6 of the State Constitution and the provision of Chapter 5A, Article 3, Section 1, et seq. of the Code of West Virginia.
It is the opinion of this Court that Article X, Section 6, which states:
“The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever.”
has no application and does not constitute a tenable defense to the claim. We do not consider this to be a case where the State’s credit is granted in aid of a city, nor one where the State has assumed or become responsible for the liabilities of a city. The constitutional provision has been interpreted as prohibiting the granting of State aid to counties and municipalities by direct appropriation or by granting a credit. Although the City of Athens, West Virginia, had a primary contractual duty to keep the College supplied with water, it appears that the City neglected or was unable to meet its obligation to the *12 College. The services were directly requested by the Governor who had funds available in his contingency appropriation to make payment for said services. The appropriation is for public purposes and we find that the Governor’s action created a moral obligation on the part of the State to pay for said services. A further fact developed at the hearing was that the water made available by the digging of the two wells was not used by the College but we feel this to be irrelevant and immaterial to the State’s contractual obligation to pay for services rendered under an emergency situation which was called to the attention of the Governor and which he felt required immediate and prompt attention to safeguard the health, safety and well-being of a student body of approximately 1800 at the College.
Chapter 5A, Article 3, Section 1 of the Code, also cited as a reason for the Auditor’s refusal to issue a Warrant for the payment of the claim, deals with the purchase of commodities by the Departments of the State Government and outlines the procedures to be followed. However, Section 17 of said Chapter and Article makes an exception for bona fide emergencies arising from unforeseen causes. We also hold that said Section of the Code has no application to the instant case.
The Legislature has seen fit to appropriate annually for the use of the Governor what is designated as a Civil Contingent Fund and the Governor is authorized by Statute (5-1-18) to pay sums from the fund which the Governor may deem necessary or proper. The Governor’s requisition in every case does not authorize the Auditor to issue a Warrant for payment of funds particularly where the Governor has no authority to make a requisition. It is our opinion that as the Chief Executive Officer of this State, the Governor does have authority to incur obligations to meet an acute emergency which involves sanitation, health or safety of a community. This Court should not assume by judicial review the prerogative of the Governor to determine what constitutes an emergency. It is true that subsequent developments, not foreseeable when the Governor acted, disclosed that no real emergency existed. The parties involved acted in good faith under circumstances then existing which strongly indicated that the College would have to shut down because of a water shortage.
The Chief Executive is vested with discretion by the Constitution and laws of the State respecting his official duties, and this discretion should not be subject to review or control by the Court of Claims. *13 When funds are appropriated for the use of the Governor in the discharge of his official duties, his judgment in disbursing those funds under what appeared to be emergency conditions should not be questioned, unless it appears that he acted improperly, in violation of law, or in bad faith. One of the Governor’s duties is to see that our educational institutions function, and no College can function without an adequate supply of water to meet the needs of the students, the personnel, ánd the various public buildings.
For the foregoing reasons, an award will be made to the petitioner in the amount of $11,119.33, for the drilling of wells to make an emergency water supply available to Concord College.
Claim allowed in the amount of $11,119.33.